US Senate, House of Representatives, with Regents, Members of Congress, and elected States v. Arcand and Wing. Good morning, Your Honors. My name is David Ness, and I'm here today appearing on behalf of Bobby Joe Wing and Kenneth Arcand. Bobby Joe and Kenneth are serving the rest of their natural life in prison for an act that I think everyone agreed, including the government, was a tragic accident. At the beginning of the trial, the trial judge instructed the jury and let the jury know that their case did not involve the death penalty and that neither Bobby Joe nor Kenneth would have that sort of exposure. He then went on and instructed the jury later on at the close of the evidence that sentencing would ultimately be up to the court. We objected to that at trial primarily because it was misleading. I don't think as a factual matter it was true. In fact, their sentencing exposure was fixed by statute, and the judge had no other alternative if they were convicted of first-degree murder but to send them to prison for the rest of their life. There was no discretion involved, and the judge could not fix the... The judge didn't instruct the jury that the sentencing was up to the discretion of the judge. The judge instructed the jury that the sentencing would be done by the judge and was not for them to consider. I think what he said is that, and it was in keeping with the Ninth Circuit's instruction, was the punishment provided by law is for the court to decide. Right. Now, for the court to decide, there has to be at least some choice. The court didn't have a choice. There was no decision to make once they were convicted. In fact, that choice had been made by virtuous statute. Wouldn't there be a possibility of a downward departure? Not from a minimum mandatory sentence, Your Honor. It was fixed by statute, and it was a minimum mandatory life imprisonment. So there was no possibility of a downward departure. Now, the courts have generally held that sentencing matters are not something that is for the jury to consider, and that basically involves the dual role of the court and the jury, and that the court sentences, the jury finds the facts, finds guilt or innocence. But the courts have found an exception to that rule, and in fact, I think it was Justice Thomas in the Shannon decision that indicated that there could be an exception to that rule when misleading or otherwise irrelevant evidence concerning sentencing was introduced. Now, in this case, I think what the judge did here by instructing the jury that the death penalty was not on the table is that it would naturally have the effect of setting the jury's mind at ease knowing that they're not going to expose these people to the death penalty, and therefore would probably inure in the favor of the government to avoid some sort of compromise verdict. But then when the judge went further and told the jury through the instruction that the punishment was for it to decide later on, the jury would necessarily believe that, in fact, there was some sort of discretion here. I don't follow your argument there. Well, when the jury's told the judge will decide, why does that imply discretion? Well, I would say that if there's a decision to be made, it implies that there's some sort of discretion when it comes down to sentencing, that the judge can actually make a decision, that the choice isn't already made by virtue of the statute. And so that, I think, then inured to the prejudice of these two defendants. I understand the logic of your argument, which is not to say that I'm persuaded by it. I'm just not sure it really leads us anywhere. Suppose the only option – it wasn't the case that the only option was life imprisonment. Suppose there was an option for 50 years. That would satisfy your argument in terms of giving the judge some discretion. It really doesn't change anything whatsoever for the jury. If the jury doesn't know the bounds of discretion or the range of possible sentence, it has to assume if they're facing a charge of felony murder, I think they'd assume the consequences will be substantial. Does it matter to them? Are they affected by something that would include a variation as insignificant as either life or 50 years? Well, and we didn't – I mean, I think that it would in this sense, and I'm probably treading somewhat on dangerous territory, but nevertheless, it is recognized the juries do, in fact, have the power to acquit if that's what they want to do. And one of the reasons why they've forbidden sentencing information from getting to the jury is for fear that it usually works to the detriment of the defendant, rather, and to the defendant's benefit. Because if you allow information such as parole information, things like that, then the jury is more likely to compromise on their verdict. Well, in this case, for example, I understand the judge gave defendants the murder charge or with the felony murder charge and arson charge together. And I understand defendants elected to proceed just with the felony murder charge. Now, there's no discussion as to why, but the only inference I have is that defendants figure they've got a better chance of avoiding an adverse result because they don't provide the jury with a compromise, with something else, a lesser offense they can convict on. Whether that's the case, I don't know. But we all understand that juries make decisions for a variety of reasons. Some of them may not fit the theory of the law. I just don't understand why that's going to be a factor here if the jury, even if the jury understands there's some discretion, they have no information to think that discretion is substantial or that the consequences to be inflicted upon defendants wouldn't be enormous in the event of a conviction. I don't think we can say that they had the belief that the judge could mete out whatever punishment he felt mercy called for. The difficulty with this case, and there's difficulty with both sides to be candid about this, that the facts, particularly because the government has elected not to join the factual argument with regard to whether in a perfect world where I had all power, I would render this sentence in response to this conviction. I mean, the facts kind of scream out, gee, this isn't the result that should come out of these facts. But the jury doesn't have information that says the judge has a free hand. The jury knows that they're not to consider punishment, but they're told they're not to consider punishment. And the punishment will be taken care of by the court, possibly with language that suggests the court has some kind of discretion, but with no information about how much discretion the judge has. So I come back to the hypothetical I start with. Suppose the statute says life or 50 years. From the jury's perspective, there's zero difference there, I think. And yet that would be perfectly okay under the argument that you're offering. So I get back to, I'm not sure that we have reason to think the jury was led to believe the court had substantial discretion in a way that would have affected the jury's verdict. Not that I'm explaining this particularly well, but. I don't know exactly what the jury thought on that point. I guess our main point is that the way this case developed and the instruction given by the judge at the beginning of the case and the instruction given at the end of the case was, in fact, misleading. I'm not saying that the judge purposely did that, but it was misleading in that it placed erroneous information in front of the jury, I think, and would lead them to an erroneous conclusion as to the ultimate outcome of this case. No, the problem is that in a perfect world, they wouldn't have been charged as they were charged. Now, maybe I'm casting aspersions, and I don't intend to do that, but there are prosecutors who would not have charged as these people were charged on these facts. Right. As it developed, even though there's controversy as to who did what, because the consequence of a guilty finding is probably extreme under these facts, but where is there room for a court on review to grant relief? In this case, well, I think any number of the trial errors, either taken together or looked at separately, I think, could and should result in a reversal of their guilt. The Eighth Amendment arguments were swimming upstream, but I think, Judge, as you pointed out, based upon these facts, this is an extreme sentence. I struggle personally. The good thing, nobody knows really who set the fire in spite of the fact that there's been a finding of guilt. Right. That testimony would have left something to be desired in terms of who set it where. But there's evidence I gather from the record that shows that the two heavy points were the points they each said they started the fire. So you've got the case, but we've got what we've got. But where is there room for relief under this record? That's what I don't know. I think two of the issues that I struggle with here is the refusal of the trial court to allow us to present information bearing upon the validity of the confessions. And that, I think, especially taken with the refusal of the trial court to allow us to get into any evidence about Hannah Hasdy Eagle allegedly starting or trying to start another fire just two months before this. Now, Bobby Jo and Kenneth, because the FBI's center of attention was focused on her and her family, that she didn't have kids, that her mother still had kids at home. Her father and mother were taking care of these kids. She didn't know that the consequences would be. I follow what you're saying, and I think I know where you're going. But the problem is, where she said she did what she did is where the fire probably started on this record. I recall the testimony, Dean, that Kenneth Arkand was said to have. He was out at the carport, and he tried to set something on fire which wouldn't burn, but the paper behind it would burn. And that was the hot spot. That was one of the hot spots. She said she did what she did where she did it, and that was one of the hot spots. That was where the fire probably started. Both instances. Now, remember, Dick Swingley, the government's expert on the fire, also testified that the hot spot in that fire could be caused not only by where it started first, but also if there was more fuel around there. And the testimony was that there was more fuel around there and that the furniture was there and that the outside shed was against the wall, which would create more fuel, which would allow the fire to burn hotter. We can't reach right. They've confessed and they've done it. I'm asking you, where is there some room legally for relief? Well, Judge, I've... Well, you're pointing to the evidentiary rulings. Right. And let's speak in particular about the last one, the defendant's state of mind as a way to explain, basically to explain why a confession was made, which the defendant now alleges was not accurate. Why is it that evidence should have been permitted? Because I think it went directly to Bobbie Jo's state of mind, and it was supported by her other testimony about why she, number one, didn't trust Agent Edwards, why she felt that this was the only way to take the focus off of her family. The two points that we tried to get into evidence is, number one, how she felt the day prior to her confession, how she felt after her mother had been interrogated by the FBI for five hours. And that wasn't really in dispute. I think everyone agreed her mother had been in there for five hours. And also how she felt as a result of Agent Edwards playing to their common racial heritage and that sort of sensitivity. He testified earlier that he had done that to build rapport with her. And so I think that that effect combined with the fact that she didn't believe that the repercussions would be as harsh as what they were and her desire to protect the family, I don't think were explored enough, and enough evidence was presented to be able to have the jury adequately assess her claim that her confession wasn't, in fact, true. She testified, and she testified that her confession was not true. She did testify that, yes. And she testified that her mother had been examined for five hours and she testified that she confessed falsely to spare her family at ER 191. The only thing that she didn't get to testify to was an answer, when you answered when you made these confessions. That kind of a question is so open-ended that you don't know where it's going. So I can see why the judge would sustain an objection to that kind of question. But the material facts, the circumstances which led her to confess that she claimed falsely were in the record, were they not? Before the jury. In a vacuum, yes. But without her testimony about the effect of those facts upon her and her emotional state, I think is where the problem lies here. Was that argued to the jury that she was under stress and that's why she confessed? I mean, isn't that the argument? That was the argument. It's the lawyer's job, right? But, of course, that's not evidence, as the jury has instructed. She testified she confessed because I was protecting my family. Isn't that what she would say when she was asked the question, how did you feel? I felt I had to protect my family. She got that out. And that answer following through doesn't mean it's not true. It means I came forward and told the truth because I didn't want my family to keep being put through all the things they were put through. Sure. Don't you see that that could be a conclusion? That could be a conclusion. And perhaps that's why it's so important that she be able to explain how she felt. The problem about the question, though, at least from one perspective, everybody who commits a crime after it's over has some thoughts about it. And if you ask if it becomes important then to get how they felt, how they feel now may have something to do with what they say about how they felt then. That's true, but wouldn't that be a credibility question? I guess I asked the question back rhetorically. Sure, but that would be the jury's decision. I see I only have less than three minutes left, so I'll leave room for rebuttal. Thank you.  This is a horrible case, don't you think? It is a horrible case, Your Honor. Why did it get to be so horrible? Well, I would like to answer. Some of it will be outside of the record, but I'd like to answer. Well, no, don't go beyond the record. Well, I think the record, though, supports. We know why the penalty for arson is as it is. Absolutely. And this was their own house they were burning down, and they had no reason to believe that the child was in the back room. And if the child, you say, the record indicates that your position was, all right, that's tough. But if the child hadn't been dead drunk, she might have been able to get out of there when the fire started. I agree, Judge Ferris. The one thing that I disagree with is that the government's position was tough. Oh, it was tough. We can't decide the case on that. I know. From the beginning, the government recognized a couple of things, that this was a tragic situation, that they had intentionally committed an arson, and the result of their actions was that this 16-year-old girl had died. We had confessions, oral and in writing, from the defendants. But this case is a classic case of how much a confession will do for you in front of a jury when you really have enough corroborating evidence but conflicting evidence. And in addressing the case, and this is not outside of the record, you can see the result that the government wanted here, as did, I think, the defense attorneys in this case. Because of the addition of the arson charge at the last, and the record shows this, that everyone submitted jury instructions for both crimes, expecting that both crimes would be tried. What you had here, you know, in hindsight, we got a guilty verdict against both defendants. That wasn't assured at the outset with this record at all. What you had was a situation where the conduct here violated two statutes. Now, because of the choice of the defendants, and it was their deliberate choice to only go forward with the felony first-degree murder case, that's the conviction we have. And we're here on appeal for various legal issues that really are not error at all. To say that this is the result that anyone wanted is not right. Judge Clifton is exactly right. This is a difficult case for both sides, and it was a difficult case throughout the proceeding. But there is only a certain amount that was in the hands of the government to do in this case. Should we not have charged first-degree felony murder at the outset, knowing that we needed something to get the defendants to plead to, hopefully, so there would not be a trial in this case? Okay. Is that the mistake we made? But we tried to get the defendants by adding the arson charge to do the right thing or to have the jury have a choice. And that was taken out of our hands. These children didn't know. These children, they weren't children, 21 and 20, whatever they were, but very young people. I don't know that they knew the consequences of the choice they made. I just think in my interaction with them across the courtroom and through their attorneys that it was a situation where they did not want a verdict against them at all and that it was they just didn't believe the jury would return this verdict. And quite frankly, I don't know that anybody in the courtroom did. It's a difficult case. We're obviously moving pretty far from the issues, but I can tell everybody's thought about this for a long time. We've been thinking about this now for a couple of months. In the end, you get to a result that doesn't make anybody particularly happy. And the unique responsibility of the government is, as you well know, you're serving a couple of different masters. It's not simply a tennis match where you respond to what the other guy does because at the end the government's trying to render justice, and sometimes that means losing if that's the right result. The prosecutor should be happy if justice is attained. It's just kind of hard to say at the end of the day that justice is being realized here. I don't know what I can do about that. I agree, Your Honor. I'm not sure at this point what you can do about that. I agree, Your Honor. It's a question that cries out to be addressed, and inevitably on some level colors how everybody else views the system and how we have to approach the issues that are put properly before us. Absolutely. I realize we've gone far afield to get back to the issues in the case. We believe that the court instructed the jury appropriately. It was interesting that he talked about the death penalty at the outset. That was of concern to the government. It's not available to the government in the District of Montana in Indian Country cases. By statute, the tribal government has to opt into that penalty. But the word murder, in the view of the court, would have made the voir dire process. I think that was his reasoning more difficult, and he wanted that off the table because it wasn't an option. It wasn't a penalty option. You know what disturbs me, and this is just a fraction of the court. Once he took that off the table, did he have some obligation to say what is on the table? The Supreme Court says no in Shannon. What we've talked about and the distinction I tried to make in my brief was this. The distinction between, well, why the juries are advised as they are in federal court, has nothing really to do with sentencing discretion and everything to do with the respective roles of the jury and fact finder and the court. And so in this case, that instruction, which is approved by this court and in direct compliance with the Supreme Court law, is to recognize those roles and that the jury has no sentencing function at all. So in following through with that purpose, this instruction did not mislead. It was exactly what the Supreme Court required to be instructed. It's a model pattern instruction of the circuit for a reason. It comports with the law. The sentencing issues in this case are pretty straightforward on the law. The LeFleur case has been longstanding. Booker doesn't change mandatory minimum sentences. The only route out of a mandatory minimum sentence in this situation would have been a substantial assistance motion by the government. That certainly does break a statutory mandatory minimum. There really wasn't any discussion of that or what information could have provided substantial assistance to the government in this case. So by virtue of that, it was a mandatory minimum that 3553A in Booker does not affect by the cases that have come down post-Booker in this circuit. Although the government is candid that the evidence in this case was controverted and difficult, it certainly was sufficient. The confessions given in writing and orally by the defendants were corroborated by the expert who did talk about the burn patterns in the sill plate loosely. And then there was one witness who actually observed Mr. Arkand lighting in the carport area and at the same time observed a fire that was burning in the house, which would corroborate the confession of both Wing and Arkand. The fire that was started by Hannah Hasdiego, which was going to be a difficulty for us all the way through, there were three witnesses who were in the house who watched or set the fire and watched it be put out and were there by their accounts from 10 to 20 minutes with no fire in the house starting. They left, and then the house was engulfed in flames. So the sufficiency of evidence argument is just not one that in this case asks this Court to reverse. It's the jury's purview to decide who to believe and what evidence to believe. It is a very difficult case. Given the importance of the confessions, could you focus briefly on the state of mind evidence that was excluded? The government, as you saw, allowed a number of questions to go that really did go to state of mind. The objection came with the question, how did you feel? Because it was a question of, it's hard when you're not in trial to express why you think that a question is a bad question and you need to object to it. Sometimes it's a gut feeling. A how do you feel question in that situation, in my view, was a gut, this is an inappropriate question. And obviously the district court agreed. But when you're looking at what was allowed, let's just assume that the judge should have allowed her to answer that question. So for argument's sake, whatever that answer may be, we don't know. But what was already in the record were all of a lot, a lot of the circumstances surrounding the giving of the confession, and not only the day that she gave it, but also those things that they argue affected her, such as her mother's confession and how long that took and how she felt. So if she had answered, I felt pressured, that would be cumulative to what she took the day to. Exactly. Because I was protecting my family. It's a harmless error. This is the problem that the defendants faced, I believe, at trial. The reasoning behind their confession and why it was, in their view, not a product of voluntary knowing conduct on their part, was that they were trying to save their family. And then at trial, they pointed the finger directly at a family member. And that was really a discrepancy that could not go unnoticed by the jury. It just, that just didn't ring true as a reason for why they would have falsely confessed. It wasn't certainly accepted by the jury in this case. Although knowing what we know and what the jury didn't know, it begins to make some sense. Because surely they were advised by the time of trial of the consequences that they were facing. That they may have elected to roll the dice is a decision they can make at that time. And suddenly, if at age 25 I'm going to be locked up for the rest of my life, maybe we ought to fess up that it was mom, not me. Whereas at the time, not realizing the consequences, thinking, as I suspect they probably thought, look, it's our house to begin with, we're kind of allowed to burn it down. That may not be legally correct, and it may not have been legally their house, but it's not a hard inference for somebody to make, particularly somebody not versed in the legal system. And so I don't have a lot of difficulty reconciling the defense that I confessed because I wanted to protect the family versus in the cold light of day, okay, let's own up to what really happened and who really did it. It was mom, not me. But, you know, that's some stuff that we can know that sometimes the jury has to weigh as well. And the jury, it's speculation on my part. It seemed to me that that was just something that didn't ring true. And I argued. Except that I could figure out why it did that. Absolutely. The problem was, Ben, that went right to the heart of the factual defense, which is that mom did it. Now let's go aside from the fact that that's why they falsely confessed they wanted to protect a family member, but now they're pointing the finger. Let's go to their defense. Mom did it. Well, they had to overcome the evidence that we did have. And that evidence was pretty consistent from the three people who watched her do what she did. I mean, in fact, those witnesses wouldn't even go as far as saying it was setting a fire. You know, they were, as much as they were cross-examined about it, it was a flame. No, it really wasn't a flame. It was a little prick. Nothing ever came of that. We were there 10 to 20 minutes. Nothing erupted. So on all fronts, that defense just didn't work for them at trial. Go ahead. And, again, we aren't trying it, but the thing that experience tells anybody is that you quite often think a fire's out, and it's not. Absolutely. And that was a good argument that was made by the defense. The timeframe of 10 to 20 minutes was what we used to combat that, that it would have erupted during that time. And then, of course, that might have been successful for them if the jury didn't believe the confessions of the defendant, that she, in fact, started the fire in that area. Suppose, here we are, accepting everything you've said as a matter of fact and law. And let's just go ahead and presume for a moment they did set the fire. We're still left with a pretty unsatisfying result. We are. How should that be addressed? I don't have the answer. What is raised in this appeal, there is no ground for reversal. I certainly wish this decision would have been made differently by the defendants at a time when something could have been done. Just speculate. Why didn't they? What? Is it because they are uninformed? No. Isolated? No. They don't understand? They had the best representation. And I hope I'm not speaking out of turn. I think the defense attorneys really wanted them to either take a plea or allow that case, that charge to be tried to the jury. I think I should stop you because we can't decide the case on that. I understand. But we've got a set of facts. I know. And we've got a record. Maybe it was the bravado of youth. We have to decide on that. Maybe it was we're not going to get convicted. Let's just go for the charge as it is and take our chances. So your response to Judge Clipper's question was we can't do anything on appeal. If there's any clemency, it's got to come from the executive. Yes. If there's anything the executive can do. Well, we know the executive has sort of absolute power with regard to the pardon. The process doesn't work that way except in the closing days of the administration. Pardon, pardon, yes. But it's, I mean, I understand you can't decide today what charges to bring. This may be an object lesson for everybody. Absolutely. We've got to learn from experience. This is what we'll be able to do differently next time. But for these people, this is it. And that's why it becomes so difficult for everyone participating in this case to figure out where to go next. Yes. Thank you. Thank you. Mr. Ness, you ready to build a bridge so we get across everything we've got? Across the bridge. I hope I do. Let's put it that way. The government argues that their confessions just simply didn't ring true. And I guess in response to that, I would argue that the confessions may very well have rung true had the jury been informed that Hannah Has Eagle had started another fire, that particularly in conjunction with the testimony that she, through a lighted piece of paper, tried to start this house on fire, even with the testimony that that fire burned itself out, that doesn't preclude her from going someplace else and starting yet another fire, that together with direct testimony from Bobby Jo Wing about what she was thinking and how she felt and why, from her heart, she decided to take responsibility for this, may very well have resulted in a different outcome. I would also take issue with the government's reading of the Shannon case. I don't read it to be quite as cut and dried as the government does, in that the Shannon case does state that although the court concludes that the court should not give an instruction concerning the consequences of its verdict and it shouldn't be given as a matter of general practice, that it should and can be in certain situations, such as where erroneous information is placed in front of the jury. And here I think that the facts of this case fit within that exception. What was the erroneous information? Well, the erroneous information through the instruction given by the court that indicated that there was some sort of discretion rather than this was life, this was it. And that was the instruction given at the end of the case. I don't have anything further, Judge. Thank you very much for this. Thank you. We thank both counsels for their arguments. The case just argued is submitted.
judges: Farris, Clifton, Bea